IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDOW CHRYSLER JEEP CO., :
etal :
  :
       VS. : C.A. NO. 06-5093
  :
DATASCAN TECHNOLOGIES :
  :

O'Neill, J                                                                              September 17, 2008

M E M O R A N D U M

On October 22, 2007 plaintiffs Brandow Chrysler Jeep Co. et al. filed a complaint alleging negligent misrepresentation, breach of fiduciary duty, and intentional misrepresentation on the part of that defendant Datascan Technologies.. Before me now are defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Number 40), plaintiffs' response and defendant's reply and defendant's motion pursuant to Federal Rule of Civil Procedure 56(c) (Docket Number 44), plaintiffs' response and defendant's reply.

BACKGROUND

Plaintiffs are the Brandow Auto Group[1] and the individuals and entities of

---

[1] The Brandow Auto Group is also known as the Brandow Group of Companies and is comprised of a group of independent companies cooperating to provide automotive services. The Brandow Auto Group businesses include the following Pennsylvania plaintiff corporations, each with a Pennsylvania principal place of business: Automotive Consultants, Inc., Autostar Collision Center, Inc., Brandow Chrysler Jeep Company, Brandow's Fairway Chrysler Jeep Dodge, Inc., and Express Car & Truck Rental, Inc. It also includes the following limited partnerships: Repete Associates and Wayfare Realty Limited Partnership, based in Pennsylvania, and New Jersey-based Route 130 Florence Realty Associates. The final Brandow Auto Group business is Brandow Chevrolet, Inc., a New Jersey corporation with its principal place of business therein. The Brandow Auto Group also includes nine

which it is comprised. Defendant is Datascan Technologies, a company incorporated in Georgia with its principal place of business therein as well.

Plaintiffs had a long-standing financing relationship with PNC Bank. On April 28, 1998, PNC entered into a contract ("Audit Agreement") with defendant to audit some of PNC's customers by conducting flooring verification of their inventories. The Audit Agreement provides defendant will not be liable to PNC for misinformation provided by its customers.[2] Moreover, the Audit Agreement explicitly provides that PNC will indemnify defendant for claims asserted against it based on the performance of services covered by the agreement, as follows:

---

individual plaintiffs, including Pennsylvania citizens Peter A. Brandow, Andrea Brandow, Stephen A. Spielman, Louanne Spielman, Manuel Brandow, Renee Brandow; Mannyco, Inc., a Pennsylvania corporation based therein; and 2104-2106 Florco, Inc., a New Jersey corporation also based therein. Each of the nine individual plaintiffs has either maintained an interest in the Brandow Auto Group businesses, personally guaranteed financing for the same, or invested personal funds in the same. The amended notice of removal alleges that all parties including partners in the partnerships are citizens of Pennsylvania or New Jersey.

[2] The Audit Agreement provides as follows:

**6.     REPRESENTATION /ACKNOWLEDGMENTS**

     6.1.    Company shall not be responsible or liable in any manner, for the accuracy or veracity of any information received from any Customers or any of their representatives or employees during the course of an Audit by Company. Company shall not be liable for any secured Inventory sold by Customer that is not reported and/or reimbursed to Client. Company's responsibilities shall include providing current and accurate information reporting that is provided to Company by the Customers or any of their representatives or employees during the course of an audit by Company.

     6.2.    Client acknowledges that Company's ability to perform services as described herein and the results obtained from such services is dependent upon the accuracy and veracity of the information given to Company by Client and Customer.

     6.3     Company shall not be liable, pursuant to the terms of this Agreement, for any Audit performed based on any inaccurate information contained in any Files supplied by Client to Company, on any inaccurate information provided to Company by any Customer or any of their representatives and/or employees, and/or based on any special instruction by Client.

> Client [PNC Bank] hereby indemnifies Company [DataScan], its agents, representatives, principals, employees, officers and directors, from and against any loss, damage or expense, including reasonable attorneys' fees incurred or suffered by Company for any services rendered by Company in accordance with the terms and conditions of this Agreement, which claim does not result from the gross negligence or willful misconduct of Company, its agents, representatives, principals, employees, officers, and other directors, at the time of Audit, to record the appropriate status of any Inventory on a File provided pursuant to the terms of this Agreement.

In or about 2001, defendant began conducting monthly inventory audits at plaintiffs' dealerships. Plaintiffs claim defendant's audit reports were rife with material misrepresentations, inaccuracies and omissions. Plaintiffs also claim that defendant's audits were not in compliance with industry standards and that defendant did not share information with plaintiffs as they were required to do. Ultimately plaintiffs lost in excess of ten million dollars due to an "out of trust" situation plaintiffs claim defendant should have detected. Plaintiffs bring three claims against defendant: negligent misrepresentation (Count I), breach of fiduciary duty (Count II), and intentional misrepresentation (Count III).

Defendant moved for dismissal for failure to state a claim on all counts and for summary judgment based on the release signed by plaintiffs with PNC ("PNC Release"). In August 2004, PNC became concerned about plaintiffs' "out of trust" position and conditioned further loans on personal guarantees, as well as plaintiffs providing PNC a broad release of all conceivable claims that might arise out of the circumstances that led plaintiffs to be "out of trust." Plaintiffs signed the PNC Release on November 15, 2004, releasing not only PNC but also its consultants and agents "from all manner of claims . . . whether known or unknown and whether based on facts now known or unknown . . . from the beginning of the world to the date of this Release." However, the Release only protected agents and consultants of PNC if PNC is or may be liable

for indemnification:

> [T]he release provided herein and in the other documents executed on the date hereof by one or more of the undersigned in favor of the Bank shall not release any agent or consultant of the Bank (but shall release the Bank and any other RELEASEES) from any claim unless the Bank is or may be, directly, or indirectly, liable on or with respect to such Claim for indemnification, contribution or otherwise, or is or may be secondarily liable thereon, in which case the release provided herein and in such other documents shall fully apply to such Claim and to any such agent or consultant liable therefor.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials

of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely."  Scheuer v.

5

Rhodes, 416 U.S. 232, 236 (1974).  When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims."  Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

DISCUSSION

I. Defendant's Motion for Summary Judgment with Regards to the Terms of the Release Entered into by Plaintiffs and PNC Bank

Releases are construed under the same principles that apply to the interpretation of contracts, generally.  Nationwide Ins. Co. v. Schneider, 906 A.2d 586, 595 (Pa. Super. Ct. 2006). While "the general rule for construction of releases is that the intention of the parties must govern, [ ] this intention must be gathered from the language of the release." Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975), citing Evans v. Mark, 218 A.2d 802, 806 (1966).  If a release has "clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding."  Harrity v. Med. Coll. of Pa. Hosp., 653 A.2d 5, 10 (Pa. Super. Ct. 1994) (citation omitted).  Moreover, the parol evidence rule will apply forcing the court to "construe the contract only as written and [to] not modify the plain meanings of the words under the guise of interpretation."  Id.  Furthermore, a "signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake."  Three Rivers, 522 F.2d at 892, citing Kent v. Fair, 140 A.2d 445, 447 (Pa. 1958).

Both the PNC Release and the Audit Agreement are clear and unambiguous.[3]  Thus, the

---

[3] Plaintiffs argue that the use of the terms "agent" and "consultant" make the PNC release ambiguous.  However, terms undefined in the contract are construed consistent with "the

intent of the parties to the PNC Release and the Audit Agreement will be gathered from the language of the documents only. The PNC Release dictates that plaintiffs release all agents and consultants of PNC from liability if there is a possibility PNC will ultimately be liable. The Audit Agreement makes PNC indemnify defendant for any claims unless the liability results from defendant's gross negligence and/or willful misconduct. In order for the PNC Release and the Audit Agreement to result in dismissal of plaintiffs' claims, (1) defendant must be an agent or consultant of PNC, and (2) defendant must not have engaged in grossly negligent conduct or willful misconduct.

A.      Agent or Consultant

Under the Audit Agreement, I do not find defendant an agent of PNC. The agreement provides that defendant is an agent of PNC only "for the limited purpose of receiving checks made payable to Client from Customer and to deliver such checks." For all other purposes defendant is an "independent contractor" of PNC Bank. Such clear language indicates that the parties limited the scope of duties for which defendant would be considered an agent of PNC. As defendant's actions now at issue are outside of the scope of its contractual role as an agent, it will not be released from liability to plaintiffs as an agent of PNC.

Although the Audit Agreement labels defendant an "independent contractor" of PNC Bank, I find that defendant should be considered a consultant of PNC under the PNC Release. A consultant is "one who gives professional advice or services regarding matters in the field of his

---

accepted and plain meaning of the language used." Harrity, 653 A.2d at 10. Thus, plaintiffs' argument is unpersuasive and will not render the parol evidence rule inapplicable. Hence, evidence proffered by plaintiffs, such as the affidavit of Peter Brandow, to establish the intentions of the parties is inadmissible.

special knowledge or training (as a consulting physician or engineer)." Montgomery County v. Microvote Corp., 175 F.3d 296, 302 (3d. Cir. 1999), citing Webster's Third New International Dictionary of the English Language, Unabridged, 490 (1966). An independent contractor has exclusive control over the manner in which its work is performed and is only responsible to its client for the end result. Moon Area Sch. Dist. v. County of Allegheny, 560 A.2d 1361, 1367 (Pa. 1998). The positions of independent contractors and consultants are not mutually exclusive. See e.g., Alba v. Housing Authority of City of Pittston, 400 F.Supp.2d 685 (M.D. Pa. 2005), holding that financial consultant is an independent contractor, Saudi v. Acomarit Maritimes Services, S.A., 245 F.Supp.2d 662 (E.D. Pa. 2003), noting that employee was a consultant and an independent contractor, American Consulting Corp. v. U.S., 311 F.Supp. 715 (D.C. Pa.1970), finding that steel consultant was an independent contractor. In this case, PNC hired defendant in its professional capacity to conduct the flooring verification of plaintiffs' inventories. Defendant utilized specialized tools, training, and knowledge to conduct these floor plan audits. As a part of its service to PNC, defendant created work products such as the floor plan audit reports that were transmitted to the client on a periodic basis. These activities constitute the rendering of professional services in the field of special knowledge or training. I therefore find that defendant satisfies the definition of a "consultant" to qualify as a potential releasee under the Release.

B.   Indemnity

Plaintiffs' claims involve the auditing services defendant rendered to PNC under the terms of the Audit Agreement. As defendant is a consultant of PNC, if PNC would be liable to defendant for indemnity on plaintiffs' claims, the PNC Release would operate to insulate defendant from liability, requiring the dismissal of plaintiffs' claims. However, if plaintiffs can

show that defendant engaged in conduct constituting gross negligence or willful misconduct, PNC would not be liable for indemnity and the PNC Release would not apply.

Gross negligence requires "facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference." Albright v. Abington Memorial Hospital, 696 A.2d 1159, 1164 (Pa. 1997), quoting Bloom v. DuBois Regional Med. Ctr., 597 A.2d 671, 679 (Pa. Super. Ct. 1991). It is a form of negligence where the facts support substantially more than ordinary carelessness." Id. Instead, a defendant's behavior "must be flagrant, grossly deviating from the ordinary standard of care." Id. The court may decide whether a given set of facts satisfies the definition of gross negligence "as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence." Downey v. Crozer-Chester Med. Ctr., 817 A.2d 517, 525-26 (Pa. Super. 2003), quoting Albright, 696 A.2d at 1164-65.

Willful misconduct requires "that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the [plaintiffs'] peril." Goss v. Baltimore & Ohio R.R. Co., 355 F.2d 649, 651 (3d Cir. 1965). In order for "liability for injury to person or chattels of another to be 'willful,' harm must have been intentionally inflicted." De Rosea v. West Penn Rys. Co., 182 A2d. 101, 102 (Pa. Super. Ct. 1935), quoting Bowman v. Pa. R.R. Co, 149 A2d. 877, 880 (Pa. 1930). Willful misconduct has also been defined as "misconduct committed voluntarily and intentionally." BLACK'S LAW DICTIONARY (misconduct). Although willful misconduct as a term of art "has defied definition, [] it is clear that it means something more than negligence." Id., quoting Frank L. Maraist, Admiralty in a Nutshell 185-86 (3d ed. 1996).

9

Plaintiffs argue that there is no possibility PNC would be liable to defendant for indemnity due to the nature of their claims for negligent misrepresentation and breach of fiduciary duty. However, the cases cited by plaintiffs are inapposite because they did not address indemnity as a contractual duty but rather as an equitable remedy. See e.g., Canavin v. Consolidated Rail Corp., 648 F. Supp. 268, 269 (E.D. Pa. 1986); Delano v. Ives, 40 F. Supp. 672, 674 (E.D. Pa. 1941). Furthermore, plaintiffs bear the burden of demonstrating that the Audit Agreement in conjunction with the PNC Release does not release defendant from liability. Thus, it is not enough to say that they have alleged intentional misconduct on the part of defendant. Plaintiffs must offer evidence of defendant's gross negligence or willful misconduct, if any exists, that would prevent the Audit Agreement and PNC Release from barring plaintiffs' claims. Plaintiffs have not offered any evidence of defendant's gross negligence or willful misconduct; in fact it is unclear whether the misconduct alleged even rises to the level of mere negligence.

Plaintiffs have submitted evidence of wrongdoing by defendant. Plaintiffs submitted an affidavit from their in-house counsel, Ms. Margaret M. Stuski, as evidence of defendant's misconduct in performing its floor plan audit duties. Ms. Stuski's resume reflects an extensive history in the automotive industry. She states that under 12 U.S.C. § 1867(c)(1) the Office of the Comptroller of the Currency has the ability to regulate third parties contracted by a bank to provide the services that the bank would normally provide. The Office of the Comptroller of the Currency publishes a comptroller's handbook and Ms. Stuski cites specific examples where defendant violated the same, including: (1) not checking deal jackets, (2) not confirming vehicles were at auctions, (3) not confirming that vehicles were at either two of the storage lots, (4) not confirming that vehicles were at Brandow Chevrolet, (5) not confirming that vehicles

were sold to Brandow Chevrolet, and (6) not noting damage on vehicles.

The probative value of this affidavit is unclear. It is true that the Comptroller of the Currency is entitled to regulate defendant under the relevant law, but while the opinion of the Comptroller General is entitled to weight, Pacific Legal Foundation v. Goyan, 664 F.2d 1221, 1227 (4th Cir. 1981), here plaintiff is relying on a position taken in a handbook put out by the Comptroller, not an opinion based on the facts in this case. While there is no law in Pennsylvania or the Third Circuit on this issue, the District Court for the District of Alaska found "that the purpose of the handbook is advisory and is therefore not a rule or regulation." Martin v. National Bank of Alaska, 828 F.Supp.1427, 1433 (D. Alaska 1992). Without a bone fide standard procedure for floor plan audits that defendant was required to follow, it is difficult to determine if the omissions alleged by plaintiff would even constitute negligence. Nevertheless, even if the comptroller's handbook was a list of required procedures and defendant did make these omissions, I find that such conduct would not qualify as gross negligence or willful misconduct; it would merely be evidence of negligence.

Additionally, in the deposition of Elizabeth Skinner, one of the auditors employed by defendant to audit plaintiffs' inventory, Ms. Skinner admitted that there were deal jackets that she did not see and that there were several cars that she was unable to visually verify. Yet, she seems to think that these incidents were not serious and not worth reporting. She admits that she did not relay any of this information to PNC or to plaintiffs. While her actions are hardly admirable, they are not evidence of flagrant, gross deviations proving gross negligence nor voluntary or intentional misconduct proving willful misconduct. See Albright, 696 A.2d at 1164, De Rosea, 182 A2d.at 102, and BLACK'S LAW DICTIONARY (misconduct). This even in

11

conjunction with Ms. Stuski's affidavit is insufficient for a reasonable juror to find gross negligence or willful misconduct on the part of defendant as is required under F.R.C.P. 56 and <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255 and the case is entirely free from doubt as required by <u>Downey v. Crozer-Chester Med. Ctr.</u>, 817 A.2d at 525-26.  As the plaintiffs have failed in their burden to prove defendant's conduct constituted gross negligence or willful misconduct, PNC would be liable for indemnity and the release applies to protect defendant.

As defendant is considered a consultant under the PNC Release and their actions do not rise to the level of gross negligence or willful misconduct, I therefore conclude that the PNC Release operates to release them from liability for negligent misrepresentation (Count I ) and breach of fiduciary duty (Count II ) of plaintiffs' Amended Complaint.

II.     Defendant's Motion to Dismiss Plaintiffs' Intentional Misrepresentation Claim for Failure to State a Claim

To establish a claim for intentional misrepresentation, plaintiff must establish "(1) a false representation of an existing fact or a nonprivileged failure to disclose; (2) materiality, unless the misrepresentation is intentional or involves a nonprivileged failure to disclose; (3) scienter, which may be actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage to him as a proximate result." <u>Wittekamp v. Gulf & Western, Inc.</u>, 991 F.2d 1137, 1142 (3d Cir. 1993).  Defendant claims plaintiffs cannot show a material misrepresentation or a duty to disclose, scienter, justifiable reliance, or proximate cause.

A misrepresentation is "any artifice by which a person is deceived to his disadvantage and

12

may be by false or misleading allegations or by concealment of what should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment." Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991). Thus, an omission can constitute a misrepresentation as a "misrepresentation need not be in the form of a positive assertion" in order to be actionable. Smith v. Renaut, 564 A.2d 188, 191 (Pa. Super. Ct. 1988). However, "an omission is actionable as fraud only where there is an independent duty to disclose the omitted information." In re Estate of Evasew, 584 A.2d 910, 913 (Pa. 1990) (citation omitted). Thus, to state a claim for fraud, an assertion of an omission must be accompanied by a duty to speak. Wilson, 598 A.2d at 1316.

      Here, plaintiffs argue defendant "characterized the services it was conducting . . . as audits" when they were not really audits, used the paid branch designation in the audit report it left with plaintiffs without verifying the statements of the plaintiffs' representatives as to the location and payment status of the cars and used the not paid designation based on alleged intercompany sale of fictitious vehicles. According to the plaintiffs themselves, the misrepresentations at issue came from the plaintiffs' representatives, not the defendant. Their mere negligence in accepting the misrepresentations of plaintiffs' representatives does not constitute intentional misrepresentation. However, it is true that defendant did not disclose their findings to plaintiffs in addition to their audit report. These more detailed reports were prepared for PNC, not for plaintiffs, and it has not been shown that there was a contractual relationship which required disclosure of these documents in addition to the audit report to defendant. With no contractual duty to disclose, any omissions cannot constitute intentional misrepresentations under the law.

While defendant may have been negligent in not checking plaintiffs' assertions with regard to the locations and sale status of their vehicles, the plaintiffs have not shown defendant to have the necessary scienter by demonstrating evidence of defendant's intent to deceive or reckless actions. As regards reliance, the plaintiffs were indeed more able to ascertain the truth of the location and paid status of their vehicles than the defendant. It is, additionally, unclear how defendant's reliance on the misrepresentations of plaintiffs was the proximate cause of the damages that plaintiffs have suffered. I will therefore dismiss the claim of intentional misrepresentation (Count III) with prejudice.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDOW CHRYSLER JEEP CO., : 
etal :
 :
     VS. : C.A. NO. 06-5093
 :
DATASCAN TECHNOLOGIES :

ORDER

AND NOW, this 17th day of September 2008, after consideration of defendant's motions for summary judgment and for dismissal of plaintiffs' complaint and plaintiffs' responses thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that:

1) Defendant's motion for summary judgment based on release between plaintiff and PNC is GRANTED. Judgment is entered in favor of defendant Datascan Technologies and against plaintiffs Brandow Chrysler Jeep Co., et al.

2) Defendant's motion to dismiss plaintiffs' intentional misrepresentation claim for failure to state a claim is GRANTED with prejudice.

3) All remaining motions are DENIED as moot.

    /s/ THOMAS N. O'NEILL, JR.
    THOMAS N. O'NEILL, JR., J.